May it please the Court, Richard Luckel on behalf of the appellants Tommy Desoto, Antoinette Cardenas, George Costi, Douglas Levison, and Stephen Terrell. With regard to this appeal, I do want to apologize for the length of the excerpts from the record. However, this is an unusual case in that we had a district court judge who dismissed the case for lack of specificity without making any finding that there was no way that the plaintiffs could properly plead a cause of action under federal law. And so I would like to apologize for the length of the excerpts from the record. I do want to apologize for the length of the excerpts from the record. One is the first complaint that was dismissed for lack of specificity was about 800 pages long between the complaint itself and the attachments which included declarations, deposition testimony, contemporaneous documents, bank records, e-mails, various documents that identified times, places, events, and that added an incredible amount of specificity to the complaint. And so, I mean, the difficulty from my point of view is looking at the same thing. If that's so, then it's really simple to say, you know, on X date, blah, blah, did this, and put it in a paragraph, stick it in the complaint. Well, Your Honor, and the complaint does that. Well, okay. Your Honor, the complaint had 122 charting paragraphs. Yeah, but how many paragraphs is in there? Quantity doesn't substitute for the quality of the allegation. Well, Your Honor. Yeah. For example, with the claim of a fraudulent conveyance, the complaint goes into detail with regard to the status of the old company, Trago LP, the types of assets that the company had, the nature of the transfer of the assets between the description of the asset purchase agreement, the threats of extortion against Douglas Levison, and the fraudulent statements that were made, the bank transfers of money going from Trago LP to Trago LP. It goes from Trago International to the Trago LP BVI bank account, and then back to Mr. Condon C.T. Holdings bank account. It describes in detail the nature of this fraudulent conveyance of the assets. And then with regard to the extortion claim itself, it talks about how the threat was made, not just a threat of a frivolous complaint against Douglas Levison. It was a threat of a frivolous complaint against Douglas Levison, Stephen Jarrell, Antoinette Cardenas, George Costi, and six other individuals. And under the Cottle standard, it says that there's an exception to the Norm Bennington Doctrine with regard to threats to file an objectively meritless complaint, threats to sue other defendants on objectively meritless purposes, or for an improper purpose. What does that square with SOSA? Well, in SOSA, it was an objectively, the action that was being taken was potentially had merit. So SOSA doesn't talk about the exceptions to the Norm Bennington Doctrine. It talks about somebody who's threatening a proper act. Whereas in the Cottle case, and in the recent case of, let's see, Kearney versus Foley-Lardner, issued December 19, 2009, it talks about the exceptions to the Norm Bennington Doctrine. And how these threats of frivolous actions, if they're intended to, you know, or for an improper purpose, are not protected. They're not subject to federal claims of privilege. And with regard to the Levison action, it was a threat to sue ten different people, even though they didn't intend to get money or recover anything from the nine others. They only wanted to force Levison to give up his ownership interests, to go from 39% to 5%, to give up his claims against Condon, to give up his rights to certain patents and trademarks, and to basically change his position significantly. And the threats included not just the threat to file a lawsuit, but the threat to steal the assets. In the e-mails that were submitted to the Court in support of the receiver motion, and the ones referenced in the second amended complaint, it talked about a threat to basically steal the assets. Saying Mr. Condon could transfer the assets from Company A to Company B, regardless of the claims of Mr. Levison or anyone else. Basically saying that he could transfer the assets and deprive Company A and its limited partners of any ownership interests. And these are all detailed allegations in the complaint talking about it. As far as the money laundering issue, it talks about how to transfer the assets, the basic theft of these assets or fraudulent conveyance, which is a felony under state law, was an illegal act. And the money that was transferred from the Trago International account to the Trago LP account in the British Virgin Islands, and then to a New York account for CT Holdings, that basically was money from an illegal transaction that was ending up in Mr. Condon's hands. But the Dutch Stoutworth's principal problem with this action is that your plaintiffs had no standing to assert these claims because they were all derivative of the company itself. And that how – how – did you ever cure that and how – could you ever cure that? Yes, Your Honor. With regard to derivative claims, well, first, we have the issue of Mr. Levison's claim. His damages were not damages suffered by Trago LP. He was forced to reduce his ownership interests from 39% to 5%. He was forced to give up certain claims and waive certain rights and give up certain ownership interests and patents and trademarks. So with regard to the extortion predicate act, it's Levison. The damages had nothing to do with the damages suffered by Trago LP itself. As far as the Trago LP and the limited partners, the limited partners under California law and under the Sachs case cited in the brief, you have to look to California law as to whether there's an individual remedy. And under California law – Why would you do that? I mean, that issue wasn't argued, I don't think. Maybe it was, and I missed it, in the district court. And it strikes me as being awfully complicated. That is, is it California law or is it British Virgin Islands law? Well, Your Honor, with regard to – Or is it some kind of general corporate law that's applied? And does it matter? Well, Your Honor, with regard to derivative claims, the court has to look to state law to find out whether or not a derivative – Sure, sure it does. But the law is that you look to the law of the state incorporation. Well, in the case of derivative claims, we had a Trago USA as a California corporation. The acts were all taking place within the state of California. And it was – and these acts were all within this particular state. The company's principal place of business was in the state of California. And what we have is under California law, Jones v. Amundson specifically talks about how, where you have a majority shareholder engaging in certain conduct to deprive the minority shareholders of their rights, then the minority shareholders can pursue individual claims. And the Jones v. Amundson case was a corporate case, but there are also cases that talk about partnership actions and where if a – partners are being deprived of their ownership interest by the general partner who transfers assets for his own personal benefit, then those individual partners have a right to pursue those claims. How, in just very simple words, describe for me how any one of these limited partners had a – how there is a claim being made that distinguishes between and makes individual the claims of any one of these limited partners? Your Honor, what you have is the limited partners. You had Mr. Condon, who was the majority limited partner of Trago LP, transferring 17 other limited partners over to the new company. The ones that were left behind were left behind with nothing. They were basically separated out, distinguished, and targeted by Mr. Condon. So whereas the other limited partners and Mr. Condon moved forward to a new company, the other limited partners were specifically targeted, and their ownership interests, their property rights were diminished to a value of zero. Also, with regard to the limited partners, Mr. Terrell and Mr. De Soto and Mr. Levison, each of those were creditors, and in a fraudulent conveyance case, they're standing for any of the creditors in a fraudulent conveyance to pursue claims for that fraudulent conveyance, which again gives them individual rights. But with regard to each of these, the individual rights as against Mr. Condon under a breach of fiduciary duty claim comes from basic law that talks about a majority not being able to deprive the minority or a general partner not being able to deprive the limited partners of their rights. We've got a RICO claim here. Right, but these are the basic right to damages. Now, the RICO claim has to do with how that fraudulent conveyance took place, and the fraudulent conveyance took place with a series of criminal acts involving the state law felony of fraudulent conveyance, wire fraud and mail fraud, theft. You have fraud on the U.S. Patent and Trademark Office, where they're sending knowingly false documents to the Patent and Trademark Office to transfer patents and trademarks from one company to another. You have this money laundering that goes from one company to another, knowing that this money was obtained illegally, and whether it was the money directly from the sale of the assets or money derived from these assets that were improperly obtained by the second company. Just as a matter of curiosity, it has nothing really to do with this case, but I know there's other litigation out there. involving these same parties somewhere. Why not go for the simple theory? My question exactly. You know, I mean, why try to go for a RICO claim? I mean, you just said there was breach of fiduciary duty. Well, go for it. You know, the RICO claim provides a number of benefits. First, it is... Well, have you gone for it? I mean, is there other litigation out there which affects the... Yes, Your Honor, there is other litigation pending that has been essentially stayed by the filing of a bankruptcy by Trago International, so basically our rights to enforce those claims have been stalled and delayed. Does the bankruptcy affect this case at all? Yeah, but we're not... The bankruptcy is with regard to Trago International only, and Trago International is the enterprise that doesn't even need to be a defendant in this particular case. The appeal can go... Is it a named defendant? I'm sorry. Yes, Your Honor. Well, then shouldn't... Doesn't the automatic stay apply? Your Honor, I did file the notice of the automatic stay. The automatic stay applies as to Trago International only. As to the remaining parties... So it doesn't... So does it... The action is stayed as to them, but not as to anybody else? You don't... Is that the answer? Your Honor, it can be carved out. The other... The remaining parties can be carved out as to Trago International only, which is an enterprise, and the enterprise itself isn't a necessary defendant in the case. Okay. I'd like to reserve the remaining time for rebuttal. Surely. Thank you. Ms. Conroy. Good morning. Nancy Conroy, appearing on behalf of FLE Trago International. Are you in the lawsuit? Pardon me? Can you be in the lawsuit? I'm sorry. I'm representing the FLE. I'm sorry. Wait. Which FLE? I thought you just said Trago International. I am representing the FLE in this case, which is Condon. Okay. Okay. Essentially what we have before us today is we have a number of RICO allegations that have been made against Mr. Condon. Unfortunately, what is actually occurring in this case is this is nothing more than a business dispute. Well, business disputes end up in federal court, so that's not really too much of an answer. Okay. If the allegations that they were able to prove were actually true, they would rise to nothing further than being merely torts, and these torts can be litigated in state court, and they are currently being litigated in state court. Again, Ms. Conroy, not to put too fine a point on it, but the problem is here you've got a RICO claim alleged, and there's nothing RICO doesn't say just because you can do other things that are simpler or maybe preferable doesn't mean you can't bring a RICO action. So the question here is did they have standing and was it sufficiently alleged? Okay. The district court correctly determined that the appellants did not allege their RICO predicate acts with specificity. In the order of Judge Alice Marie Stoutler, she cited to the Newman, Allen Newman Product v. Albright case of the Ninth Circuit in 1989, which established that in order to establish a RICO claim, that plaintiffs must state the time, place, and specific allegations. And Mr. LaCalle says that it did. Did it? Okay. No, they did not. They submitted perhaps a 794-page complaint. They had three opportunities. That was the first one. This one we're on round two now. So in round two, did the complaint allege time, place, content, or names, rank, and serial number? The complaint never alleged any such thing, and what Mr. LaCalle essentially was hoping was that the court would read all 700 pages of the complaint and sort through it and kind of determine what the actual acts were. Unfortunately, they were not pled with any type of specificity. There was never any statement of what was the time, place, or specific acts of any of this mail-or-wire fraud that supposedly occurred. Regarding the extortion claim, they allege that the extortion was a settlement agreement that Mr. Loveson had executed. Now, a settlement agreement in anticipation of litigation is not the type of thing that is an extortion attempt. If each time there's a business dispute and someone executes a settlement agreement in anticipation of litigation, if that constitutes a RICO predicate act, then business in California is in deep trouble. That does not rise to the level of being a RICO predicate act. It was not pled with specificity, and the judge correctly determined that they failed to state any type of accurate claim. They had three opportunities. As Judge Wormo pointed out to Mr. LaCalle, the real heart of Judge Stotler's dismissal was lack of standing. Yes. And Mr. LaCalle argues that that was an error because under California law, a minority shareholder can take on a majority shareholder who defaults on his duty and renders the majority shareholder's ownership interest either less or nil. What's your response to that? The allegations here essentially are that the majority shareholder, Mr. Condon, was manipulating the company to the detriment of the minority shareholders. That, in essence, is damage to the corporation. There's no specific individual damage to any of these plaintiffs. That is not damage that the entire corporation could have suffered. The argument regarding what Mr. LaCalle refers to as the asset transfer scheme, which was actually a settlement agreement, was a transfer of assets from the corporation. Now, if anyone suffered damages from a transfer of assets out of the corporation, it would be the corporation itself. It's very difficult to allege any type of individual damage that would be specific to any kind of minority shareholder because of those acts. Well, what about his assertion that Loveson was separately damaged or some of these individually damaged? Well, the argument that Loveson was individually damaged was based on the extortion claim. It was Loveson that executed the settlement agreement, and that would be the nature of Loveson's individual, supposed individual damage that he suffered. However, he simply executed a settlement agreement that transferred assets. The damage is to the corporation, and there was no extortion, which is the RICO Predicate Act. He's failed to sufficiently allege any of the claims that need to be alleged in order to rise to the level of a RICO claim. All right, and now the corporation itself is bankrupt. That is correct. And where are all the assets from the corporation? Well, at this point in time, the corporation and Mr. Condon himself has the assets, which are the bottle and the trademark design, and that is currently in Bankruptcy Court. One of the justices said – Wait, does Condon declare bankruptcy as well? Right now the bankruptcy applies only to Toronto International, which is the company, and Condon himself is not protected by the bankruptcy. So he has assets. Some of the assets of the company are in his name, which is what he's alleging is the asset transfer scheme. That was a settlement agreement that Loveson executed when he believed that the company was about to fail several years ago. When it appeared as if the company was not going to be successful, he basically settled out of the company. So in all of this, hundreds of pages of complaint, Is there a claim against Condon that's not against Trago International? Well, the allegation – Other than the extortion, if that is in fact – I mean, it's stated as an extortion, as a predicate act. Well, essentially the racketeering, according to opposing counsel, was this what he calls the asset transfer scheme, which was the settlement agreement. So Mr. Condon had negotiated with Mr. Loveson to execute the settlement agreement. So in that sense, the existence of what he calls the asset transfer scheme, which is actually a settlement agreement, would be an individual claim against Mr. Condon. However, execution of a settlement agreement is not an act of extortion. It's not a RICO predicate act. But that's not the basis of the district court's ruling. Okay. Right. I mean, it seems like there might be standing by some of the people against Condon now, which would not be derivative. Well, any injury that Loveson may have suffered in executing the settlement agreement would be the same injury that the corporation itself suffered, because those assets then were transferred out of the corporation. So that is exactly damage to the corporation. There could be no individual harm there. So the corporation should be suing Condon. The corporation should sue Condon. And there are a number of other potential business torts that could be litigated related to this, and the judge appropriately determined that all of that should be litigated under tort doctrine in state court. And opposing counsel even said, well, there's all these causes of action under basic minority shareholder rights doctrines. Well, yes, that can be litigated under state court. And, in fact, it is under litigation in state court. One of the questions that justices raised earlier. My worry is, and I guess you didn't quite answer my good colleague's question, does California law change what you are suggesting? The district court appropriately applied Ninth Circuit law, which in the case Sparling v. Hoffman, which determined that when shareholder injury is derivative of injury to the corporation. You're not answering my question. I know what she did. Does Californian law change that result? I would believe no, Your Honor. Why do you say that? Because under California law, if there is any injury to shareholders that are derivative from the corporation, they therefore lack standing. And there's a number of cases that California law has had on that topic. Was that topic ever addressed to the district court? Well, the district court addressed the standing issue and determined the case under the Sparling standard, which was correct. I didn't ask that. Did counsel ever raise that this case, the choice of law, questioned to the district court? Counsel presented Ninth Circuit case law and presented the appropriate standards. Are you saying no? Recommendation. I'm not clear regarding exactly whether that occurred or not. But the proper standard, of course, is Sparling, and that was pled in all of the complaints. So that was appropriately raised, and that was the basis of the judge's determination. So there could be no way to cure that via any types of amendments to the complaint. You can't talismanically convert derivative shareholder complaints, derivative shareholder allegations into direct allegations. If you read the complaint directly throughout their own complaint, they say over and over that the plaintiffs are limited partners and creditors of Trago LP or Trago International. It's in their own complaint. So they have no standing whatsoever. This is essentially a business dispute. The justices earlier raised a question regarding why not simply use the simple theories. I believe Your Honor asked that question. And I could address that issue also. I don't know. Do we have any substantive questions? No. I don't think so. I think we understand your position. Thank you. And we'll go back to Mr. McHale. Your Honor, whereas we were talking about the derivative claims, this is really a limited partnership that we're talking about, claims by limited partners with regard to the theft of these limited partnership assets. But one of the issues that can be raised is if there's any possibility of curing this complaint, then leave should have been granted to amend. Well, you already had the opportunity to amend it twice. You knew what Judge Stoutler's concerns were. And you didn't satisfy the concerns for Rigo, which is, you know, requires more a heightened level of pleading. Well, Your Honor, with regard to the specificity issue, courts have held that where the information is within the control of the defendants to dismiss a complaint with prejudice for lack of specificity without allowing discovery. To the extent that certain acts took place in certain days and times and were between identifiable people and you, but somebody who was a plaintiff was a party to the communication, you should be able to state that with specificity in the complaint. Yes, Your Honor. And I do believe the complaint has that specificity. And in addition, there's a number of predicate acts. Well, my worry is that in each one of these situations where your complaint was dismissed, you were allowed to amend. You knew what Judge Stoutler was going after. If you needed information in the hands of the other party, I didn't really see that as something which as to merely suggesting the specificity of what needed to be done. I mean, all she was saying, say what you're really saying is going to happen so you can meet the Rigo standard. Well, Your Honor, it is specifically mentioned in the brief that there's certain information that if the court did want more specificity to certain transactions where the information is exclusively in the control of the defendants, that the parties should be allowed, there should be a little leeway on Rule 9 and give the parties the opportunity to obtain information through discovery prior to forcing an amendment. But the one major question to me is if the claims of Trago LP were derivative and we have six Trago LP limited partners who are basically most of the excluded partners, why couldn't leave have been granted to amend to allow derivative claims? And the court may note that the first dismissal What would you allege? And what would you allege? Well, we could allege in the alternative to the individual damage, there certainly we could allege that certain damages were suffered by Trago LP. But I do believe that the individual standing is there as any partner can sue individually or can sue us on behalf of the partnership. Either one of those can be pursued. But if the court felt that we couldn't possibly pursue individual claims, then we should have been given leave to amend and allow derivative claims. Because this is one of those cases where you have so many wrongful acts, there has to be a remedy. Well, is there any reason you couldn't have done that to begin with? I mean, there's nothing prohibiting alternative pleading. Well, Your Honor, the derivative claim issue was not raised in the first motion to dismiss. I understand that. But when you did amend on the specificity thing, then why wouldn't you just allege it in the alternative? Your Honor, I wasn't the attorney who drafted that particular complaint. I'm not saying you, I mean you generically. Why wouldn't one do that? Well, it certainly is something that could have been done, and I don't know why the decision was made not to do that. But again, to the extent that it was a possible amendment that could have been adjourned. I don't know the answer to that question. But I kind of have some suspicion that maybe that's part of the problem. And, Your Honor, also with regard to creditors, the creditors have standing to pursue the, you know, to the extent that they've been assets were fraudulently conveyed. But, Your Honor, are there any further questions from the Court? I don't think so. No. Thank you, Your Honor. The matter just argued will be submitted.
judges: Rymer, Wardlaw, Smith N. R.